FILED

DAVID E. BOWER   SBN 119546
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Phone:  424-256-2884
Fax:  424-256-2885
dbower@faruqilaw.com

2014 JAN 14  AM 11:49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FAX FILING

SACV14-00053-CJC(RNBx)

ROBERT MASTERS, Individually And On
Behalf Of All Others Similarly Situated,

　　　　Plaintiff,

　　v.

AVANIR PHARMACEUTICALS , INC.,
KEITH A. KATKIN, CRAIG A.
WHEELER, CORINNE H. NEVINNY,
DENNIS G. PODLESAK, HANS E.
BISHOP, DAVID J. MAZZO, and SCOTT
M. WHITCUP

　　　　Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

Plaintiff Robert Masters ("Plaintiff"), by his attorneys, alleges upon information and belief, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.　　This is a shareholder class action brought by Plaintiff individually and on behalf of shareholders of Avanir Pharmaceuticals, Inc. ("Avanir" or the "Company") to enjoin the shareholder vote scheduled to be held at the annual general meeting of Avanir shareholders on February 12, 2014 at the Renaissance ClubSport Aliso Viejo Hotel, 50 Enterprise, Aliso Viejo, California 92656 (the "Shareholder Vote").

2.     On December 30, 2013 Avanir filed with the Securities and Exchange Commission (the "SEC") a Definitive Proxy Statement on Form Schedule 14A (the "Proxy") in connection with the Shareholder Vote on five proposals, including Proposal: (1) election of directors; (2) ratification of accounting firm; (3) advisory vote on executive compensation; (4) approval of 2014 Plan to increase shares available for future awards by 17,000,000 and (5) amendment of the Company's certificate of incorporation.

3.     The Proxy talks about executive compensation in connection with Proposal 3.  In this section, the board of directors of Avanir (the "Board") discusses compensation based on "pay-for-performance" as how compensation is granted to the Company's named executive officers in order (1) to attract, motivate and retain a highly skilled team of executives and (2) to align our executives' interests with those of our stockholders by rewarding short-term and long-term performance and tying compensation to increases in stockholder value.  The Proxy then goes on to discuss how stock awards are given under the current 2005 Plan or 2014 Plan, if Proposal 4 is approved.

4.     In the Proxy, the Board falsely misleads and states that if Proposal 4 is not approved then the Company may be limited on its ability to make tax deductible performance award under Internal Revenue (IRS) Code § 162(m), which are at least in part discussed in Proposal 3. The truth is that the Company is already in default of its 2005 Plan and is not eligible to make deduction under IRS § 162(m) since 2011. The Proxy does not disclose this fact.

5.     IRS §162(m) provides that public companies are not able to take a federal tax deduction for compensation paid to certain executives if the compensation is in excess of $1 million in a year.  To be exempt from  IRS §162(m) and its regulations, the compensation must qualify as performance-based by meeting certain material terms.   These terms must be disclosed to and approved by shareholders.  Moreover, the plan under IRS §162(m) must be renewed every 5 years

in order to comply with the law.  Here, the 2005 Plan was not renewed at its 5th year anniversary in 2011.  Accordingly, the Company has failed to comply with IRS § 162(m).

6.    In addition, Proposal 4 is not fully and accurately described in the Proxy.  In fact, the Proxy contains severe and material disclosure violations regarding Proposal 4, including the fact that the deductions under Section 162(m) are limited to $1 million and not to $2 million as erroneously stated in the Proxy. Further, Proposal 4 does not disclose how, and at what rate, the 2014 Plan may dilute Avanir's public shareholders.  Without accurate and proper disclosure of this information, the Company's public shareholders are misled and will be unable to cast an informed vote on Proposal 4.

7.    By failing to disclose accurate and material information, the Individual Defendants (as defined below) have violated their fiduciary duties as well as violated federal laws.   As a result, Plaintiff alleges he, along with all other public shareholders of Avanir common stock, is entitled to enjoin the 2014 Annual Meeting unless and until Defendants remedy their breaches of fiduciary duty.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise in part under the Constitution and the laws of the United States, including Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78aa] and Internal Revenue Code § 162(m).  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Avanir holds its principal place of business in the district of California.

## PARTIES

10.    Plaintiff is, and at all material times was, a shareholder of Avanir common stock since prior to the wrongs complained of herein.

CLASS ACTION COMPLAINT

3

11.     Defendant Avanir is a corporation duly organized and existing under the laws of the State of Delaware.  Avanir maintains its principal executive offices at 20 Enterprise, Suite 200, Aliso Viejo, CA 92656.  Avanir acquires, develops, and commercializes novel therapeutic products for the treatment of central nervous system disorders.  Avanir trades on the NASDAQ Stock Market under the ticker symbol "AVNR."

12.     Defendant Keith A. Katkin ("Katkin") is the Company's President and Chief Executive Officer. He has served as a director of the Company's Board since March 2007.

13.     Defendant Craig A. Wheeler ("Wheeler") has served as Chairman of the Company's Board since May 2007.

14.     Defendant Corinne H. Nevinny ("Nevinny") has served as a director of the Company's Board since March 2013.

15.     Defendant Dennis G. Podlesak ("Podlesak") has served as a director of the Company's Board since March 2005.

16.     Defendant Hans E. Bishop ("Bishop") has served as a director of the Company's Board since May 2012.

17.     Defendant David J. Mazzo ("Mazzo") has served as a director of the Company's Board since July 2005.

18.     Defendant Scott M. Whitcup ("Whitcup") has served as a director of the Company's Board since September 2005.

19.    Defendants Katkin, Wheeler, Nevinny, Podlesak, Bishop, Mazzo, and Whitcup are sometimes collectively referred to herein as the "Individual Defendants."

20.    Collectively, the Individual Defendants and Avanir are referred to herein as the "Defendants".

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of Avanir common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

22.    This action is properly maintainable as a class action. The Class is so numerous that joinder of all members is impracticable. As of January 10, 2014, there were 152,107,256 common shares outstanding. The holders of these shares are believed to be geographically dispersed throughout the U.S. The actual number of Avanir shareholders will be ascertained through discovery.

23.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include the following:

a.   Whether Defendants have breached their fiduciary duties with respect to Plaintiff and the other members of the Class in connection with Proposal 4 and the issuance of the Proxy;

b.   Whether Defendants have violated federal laws in connection with Proposal 4 and the Proxy;

c.   Whether Defendants are in compliance with Section 162(m);

d.   Whether Plaintiff and the other members of the Class would suffer irreparable injury if the Shareholder Vote proceeds as scheduled.

24.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

27.   Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**The Company**

29.     Avanir acquires, develops, and commercializes therapeutic products for the treatment of central nervous system disorders.  Founded in 1988, the Company primarily operates in the United States.  The Company's two main products are NUEDEXTA, a dual N-methyl-D-aspartate receptor antagonist and sigma-1 agonist for the treatment of pseudobulbar affect; and Docosanol 10% cream, an over-the-counter product that treats cold sores. Avanir also has products in the clinical development stage, as well as license agreements with other healthcare companies such as Concert Pharmaceuticals and OptiNose.

**Avanir's Executive Compensation Utilizes Stock Awards Based On An Incentive Plan**

30.     According to the Proxy, Avanir's compensation philosophy has two fundamental objectives: "(1) to attract, motivate and retain a highly skilled team of executives and (2) to align [Avanir's] executives' interests with those of our stockholders by rewarding short-term and long-term performance and tying compensation to increases in stockholder value."  Consequently, a significant amount of the compensation awarded to Avanir's executives is based upon them achieving certain performance goals.  The Proxy shows at page 44 the following Grants of Plan-Based Awards:

The following table sets forth certain information regarding grants of plan-based awards to the named executive officers during fiscal 2013.

| Name | Grant Date | Performance Stock Awards: Number of Shares of Stock or Units Granted | Option Awards Number of Securities Underlying Options Granted (1) | Exercise Price of Option Awards ($/Sh) | Grant Date Fair Value of Stock and Option Awards (2) |
|---|---|---|---|---|---|
| Keith A Katlin | 12/17/2012 12/17/2012 | 147,375 (3) 73,125(4) | 225,000 | $2.59 | $775,541 $189,394 |
| Rohan Palekar | 12/17/2012 12/17/2012 | 36,844(3) 26,156(4) | 56,250 | $2.59 | $193,886 $67,744 |
| Joao Siffert MD | 12/17/2012 | 49,125(3) 34,875(4) | 75,000 | $2.59 | $285,514 $90,326 |
| Christine G. Ocampo | 12/17/2012 12/17/2012 | 21,288(3) 8,963(4) | 32,500 | $2.59 | $112,204 $23,214 |

31.    Similar awards as above were granted historically to Avanir's executives.

32.    The Compensation Committee believes the best way to achieve the Company's annual goals and long-term objectives is by linking short-term and long-term cash and equity incentives to the achievement of measurable performance awards.   Inherently, the ability to grant these awards in a tax-efficient manner is important to the Company and Section 162(m) allows for a deduction if done right.

**The 2005 and 2014 Plan**

33.    On January 28, 2005, the Board filed a Proxy Statement (the "2005 Proxy") in connection with Avanir's 2005 Annual Meeting of Shareholders to be held on Thursday, March 17, 2005.

34.    At the 2005 Annual Meeting, the Board sought shareholder approval for, among other things, the Company's 2005 Equity Incentive Plan. The 2005 Plan laid out the material terms of the performance goals related to the performance-based

compensation of the Company's executives. In the 2005 Proxy, the Board addressed that approval of the Plan would allow them to grant tax-deductible awards under §162(m).

35.   Avanir's shareholders approved the 2005 Plan on March 17, 2005.

36.   On December 27, 2005, the Board filed a Proxy Statement in connection with the Company's 2006 Annual Meeting of Shareholders to be held on Monday, February 6, 2006.

37.   At the 2006 Annual Meeting, Avanir's Board sought, among other things, shareholder approval of an amendment to the 2005 Plan. The purpose of the amendment was to increase the number of shares available for issuance under the plan in order to address the high demand by shareholders for a higher percentage of compensation to be performance-based.

38.   Avanir's shareholders approved the amendment to the 2005 Plan on February 6, 2006.

39.   Following shareholder approval, the Compensation Committee used the 2005 Plan each year to grant tax-deductible performance-based compensation to the Company's named executive officers.

40.   However, due to the fact that the 2005 Plan did not disclose specific target levels of performance to the shareholders, but instead allowed the Compensation Committee to select different performance targets each year, the "shareholder-approved" status for purposes of §162(m) was only valid for five years pursuant to §1.162-27(e)(4)(vi).

41.   The Board is now asking for Proposal 4 to be approved to enact a 2014 Plan in order to sweep under the rug whatever problems the 2005 Plan have and pray for a fresh star.

**The Board Allows Compliance With §162(m) to Expire and Fails to Inform Shareholders**

42.     On December 30, 2013, Avanir filed the Proxy with the SEC, informing shareholders of the Shareholder Vote on five proposals, including Proposal 4.   In Proposal 4, the Board recommends that Avanir's public shareholders vote to approve the 2014 Plan. By structuring the 2014 Plan in a manner that complies with §162(m), the Board is hoping to save itself from substantial tax liability.

43.     However, in order to continue to grant tax-deductible performance-based compensation under the 2005 Plan, the Board should have sought reapproval of the 2005 Plan by the 2011 Annual Meeting at the very latest.   Since the Board failed to do this, as of February 11, 2011, five years from the 2006 Annual Meeting when the 2005 Plan was reapproved, the "shareholder-approved" status of the 2005 Plan for the purposes of §162(m) expired.

44.     Moreover, the Board failed to regain the "shareholder-approved" status of the 2005 Plan for the purposes of §162(m) at both the 2012 and 2013 Annual Meetings.

45.     Because the Company has no other plan in place, that was approved by shareholders and that is compliant with §162(m), the Compensation Committee has been unable to grant tax-deductible performance-based compensation under §162(m) since February 11, 2011.

**The Materially Misleading and Incomplete Proxy Regarding Proposal 4**

46.     The Proxy filed with the SEC is misleading and/or incomplete.   In particular, Proposal 4 of the Proxy states, in relevant part, the following:

**PROPOSAL 4:**

**APPROVAL OF 2014 INCENTIVE PLAN**

* * *

The Board believes that equity awards are important to incentivize our employees, including our executive officers, and our directors to remain with the Company, to motivate them to help achieve our corporate objectives, and

to align their interests with those of our stockholders. The Board has recommended approval of the 2014 Plan, which allows for the issuance of equity-based awards, because it believes, after consulting with Radford, its compensation consultant, that the Company does not currently have a sufficient number of shares available under our 2005 Equity Incentive Plan (the "**2005 Plan**") for new awards.

The Board believes that the 2014 Plan will promote the interests of stockholders and is consistent with principles of good corporate governance, including:

- *Independent Committee*. The 2014 Plan will be administered by our Compensation Committee, which is composed entirely of independent directors who meet the NASDAQ standards for independence.
- *No Discounted Stock Options or SARs*. All stock option and stock appreciation rights ("**SAR**") awards under the 2014 Plan must have an exercise or base price that is not less than the fair market value of the underlying common stock on the date of grant.
- *No Repricing*. Other than in connection with a corporate transaction affecting the Company, the 2014 Plan prohibits any repricing of stock options or SARs without stockholder approval.
- *Performance Awards*. Under the 2014 Plan, the Compensation Committee may grant performance-based awards intended to qualify as exempt performance-based compensation under Section 162(m) ("**Section 162(m)**") of the Internal Revenue Code of 1986, as amended (the "**Code**") as well as other performance-based awards.
- *Share Counting*. Each award granted under the 2014 Plan, other than a stock option or SAR, will be counted against the share pool at a ratio of 1.32 shares to each share underlying the award.

**Existing Equity Plan Information**

Effective March 2013, the Company was no longer able to issue grants from its 2003 Equity Incentive Plan (the "**2003 Plan**"), which expired by its terms. At present, the Company has one existing equity incentive plan (the 2005 Plan), which was previously approved by our stockholders. As of December 13, 2013, our 2005 Plan has 191,126 shares available for grant as equity awards and contains an annual evergreen provision on the first day of the Company's fiscal year equal to the lesser of (1) 1% of the number of shares of the Company's common stock outstanding on the last day of the preceding fiscal year, (2) 325,000 shares, and (3) such lesser number of shares as the Board may determine. If the 2014 Plan is approved by our stockholders, the Company does not intend to make further increases in the 2005 Plan's share

pool pursuant to this evergreen provision. The 2005 Plan will expire by its terms in 2015.

\*\*\*

The following table includes aggregated information regarding awards outstanding under both our 2003 Plan and 2005 Plan, the number of shares available for future awards under our 2005 Plan as of December 13, 2013, and the proposed number of shares issuable under the 2014 Plan:

| | Number of shares | As a percentage of stock outstanding |
|---|---|---|
| Outstanding stock options | 9,612,538 | 6.3% |
| Outstanding restricted stock units | 2,869,860 | 1.9% |
| Other outstanding equity awards | — | — |
| Total shares subject to outstanding awards as of December 13, 2013 | 12,482,398 | 8.2% |
| Total shares available for future awards as of December 13, 2013 under 2005 Plan (1) | 191,126 | 0.1% |
| Proposed shares available for future awards under 2014 Plan | 17,000,000 | 11.2% |

(1) We will no longer increase the share pool under our 2005 Plan pursuant to the annual evergreen feature following stockholder approval of the 2014 Plan.

Certain information with respect to all of our equity compensation plans in effect as of September 30, 2013 is provided on page 25 under the heading "Equity Compensation Plan Information."

**Reasons for Seeking Stockholder Approval**

The Board believes that equity-based compensation is a critical part of the Company's compensation program. Stockholder approval of the 2014 Plan would allow us to continue to attract and retain directors, executives, and other employees with equity incentives. In fiscal 2011, 2012 and 2013, the Company made equity awards under its existing equity incentive plans totaling approximately 2,993,888 shares, 3,501,642 shares, and 3,095,910 shares, respectively. The Company estimates, based on the advice of Radford to our Compensation Committee, that the availability of 17,000,000 shares would provide a sufficient additional number of shares to enable the Company to continue to make awards at historical average annual rates for the next four years. In approving the share pool under the 2014 Plan, at the advice of Radford, the Compensation Committee determined that reserving shares

1
2

sufficient for approximately four years of new awards at historical grant rates is in line with the practice of our peer public companies.

3
4
5
6
7
8
9
10
11
12
13
14
15
16

In addition, stockholder approval of the 2014 Plan would preserve our ability to grant a range of tax-efficient stock-based incentive awards under the 2014 Plan. Section 162(m) generally provides that compensation provided to a publicly held corporation's CEO or any of its three most highly paid named executive officers (other than its CEO or CFO) is not deductible by the corporation for U.S. income tax purposes for any taxable year to the extent it exceeds $1 million. This limitation does not apply to compensation that qualifies as exempt performance-based compensation by meeting certain requirements under Section 162(m), including the requirement that the material terms, including those of the related performance goals, be disclosed to and approved by stockholders every five years. For the 2014 Plan, these terms are described below under "Eligibility," "Individual Limits" and "Performance Criteria." Stockholders are being asked to approve, among other material terms, a set of business criteria on which performance goals may be based for future performance awards under the 2014 Plan. Although stockholder approval is one of the requirements for exemption under Section 162(m), even with stockholder approval there can be no guarantee that compensation will be treated as exempt performance-based compensation under Section 162(m). Furthermore, our Compensation Committee will continue to have authority to provide compensation that is not exempt from the limits on deductibility under Section 162(m).

17
18
19
20
21

Our stockholders last approved the 2005 Plan at our annual meeting held in March 2005 and approved an amendment to the 2005 Plan in February 2006. If stockholders do not approve this Proposal No. 4, the Company can continue to make awards under the 2005 Plan, but the Company will have limited shares available for future equity grants, the 2005 Plan will expire in 2015, and its ability to make tax deductible performance awards to executive officers will be limited under Section 162(m).

22

\*\*\*

23

**Summary of the 2014 Plan**

24
25
26
27
28

The 2014 Plan will only become effective subject to approval by our stockholders. In light of the limited available pool of shares under the 2005 Plan and the expectation that the 2014 Plan would be presented for approval at the Annual Meeting, the Company has granted restricted stock units contingent upon approval of the 2014 Plan. This summary is not a complete description of all provisions of the 2014 Plan and is qualified in its entirety by reference to the 2014 Plan, which is attached as Annex A to this Proxy Statement.

*Purpose*. The purpose of the 2014 Plan is to advance the Company's interests by providing for the grant to participants of stock-based and other incentive awards.

*Plan Administration*. The 2014 Plan is administered by our Compensation Committee, who has the authority to, among other things, interpret the 2014 Plan, determine eligibility for, grant and determine the terms of awards under the 2014 Plan, and to do all things necessary or appropriate to carry out the purposes of the 2014 Plan. Our Compensation Committee's determinations under the 2014 Plan are conclusive and binding.

*Term*. No awards will be made after the tenth anniversary of the plan's adoption, but previously granted awards may continue beyond that date in accordance with their terms.

*Authorized Shares*. Subject to adjustment, the maximum number of shares of our common stock that may be delivered in satisfaction of awards under the 2014 Plan is 17,000,000. Any shares of common stock underlying awards that are settled in cash or that otherwise expire, terminate or are forfeited prior to the issuance of stock, would again be available for issuance under the 2014 Plan. Shares of common stock that are withheld by the Company from an award in payment of the exercise price of any award requiring exercise or in satisfaction of the tax withholding requirements with respect to any award will not again be available for issuance under the 2014 Plan. Each share of common stock underlying an option or SAR award will count against the share pool as 1.0 share, and each share of common stock underlying any other award will count against the share pool as 1.32 shares. Any shares that again become available under the 2014 Plan will be returned to the share pool at the rates described in the preceding sentence. On December 26, 2013, the closing price of our common stock as reflected on NASDAQ was $3.29.

*Individual Limits*. The maximum number of shares for which options may be granted and the maximum number of shares of stock subject to SARs which may be granted to any person in any calendar year for purposes of Section 162(m) is, in each case, 2,000,000 shares. The maximum number of shares subject to other awards that may be granted to any person in any calendar year for purposes of Section 162(m) is 2,000,000 shares. The maximum amount that may be paid to any person in any calendar year for purposes of Section 162(m) with respect to cash awards is $2,000,000. Any awards granted in excess of the foregoing limits will not be eligible to be excluded from the applicable Section 162(m) limits and such excess amount may not be deductible by the Company as performance-based compensation.

*Eligibility*. Our Compensation Committee selects participants from among the key employees, directors, consultants and advisors of the Company and its

affiliates. Eligibility for options intended to be incentive stock options ("**ISOs**") is limited to employees of the Company or certain affiliates. As of December 13, 2013, approximately 268 employees and 6 directors would be eligible to participate in the 2014 Plan.

*Types of Awards.* The 2014 Plan provides for grants of options, SARs, restricted and unrestricted stock and stock units, performance awards, cash awards and other awards convertible into or otherwise based on shares of our stock. Dividend equivalents may also be provided in connection with awards under the 2014 Plan.

- *Restricted and Unrestricted Stock*: A restricted stock award is an award of common stock subject to forfeiture restrictions, while an unrestricted stock award is not subject to restrictions.

- *Stock Options and SARs*: The 2014 Plan provides for the grant of ISOs, non-qualified stock options ("**NSOs**"), and SARs. The exercise price of an option, and the base price against which a SAR is to be measured, may not be less than the fair market value (or, in the case of an ISO granted to a ten percent stockholder, 110% of the fair market value) of a share of common stock on the date of grant. Our Compensation Committee determines when stock options or SARs become exercisable and the terms on

\*\*\*

which such awards remain exercisable. Stock options and SARs will generally have a maximum term of ten years. SARs are payable in sar, in shares of our common stock or in a combination of cash and shares.

- *Stock Units*: A stock unit award is denominated in shares of common stock and entitles the participant to receive stock or cash measured by the value of the shares in the future. The delivery of stock or cash under a stock unit may be subject to the satisfaction of performance or other vesting conditions.

- *Performance Awards*: A performance award is an award the vesting, settlement or exercisability of which is subject to specified performance criteria.

- *Cash Awards*: A cash award is an award denominated in cash.

*Vesting.* Our Compensation Committee has the authority to determine the vesting schedule applicable to each award, and to accelerate the vesting or exercisability of any award.

*Termination of Employment.* Our Compensation Committee determines the effect of termination of employment or service on an award. Unless otherwise provided by our Compensation Committee or in an award agreement, upon a termination of employment or service all unvested options and other awards requiring exercise will terminate and all other unvested awards will be forfeited.

*Performance Criteria.* The 2014 Plan provides that grants of performance awards may be made based upon, and subject to achieving, "performance objectives" over a specified performance period. Performance objectives with respect to those awards that are intended to qualify as "performance-based compensation" for purposes of Section 162(m) are limited to an objectively determinable measure of performance relating to any, or any combination of, the following (measured either absolutely or by reference to an index or indices and determined either on a consolidated basis or, as the context permits, on a divisional, subsidiary, line of business, project or geographical basis or in combinations thereof): sales; revenues; assets; expenses; earnings before or after deduction for all or any portion of interest, taxes, depreciation, or amortization, whether or not on a continuing operations or an aggregate or per share basis; return on equity, investment, capital or assets; one or more operating ratios; borrowing levels, leverage ratios or credit rating; market share; capital expenditures; cash flow; stock price; stockholder return; sales of particular products or services; customer acquisition or retention; acquisitions and divestitures (in whole or in part); joint ventures and strategic alliances; spin-offs, split-ups and the like; reorganizations; recapitalizations, restructurings, financings (issuance of debt or equity) or refinancings; or regulatory and/or clinical development; intellectual property protection; and any other performance metric approved by the Compensation Committee designed to increase stockholder value.

To the extent consistent with the requirements for satisfying the performance-based compensation exception under Section 162(m), our Compensation Committee may provide in the case of any award intended to qualify for such exception that one or more of the performance objectives applicable to an award will be adjusted in an objectively determinable manner to reflect events (for example, acquisitions and divestitures) occurring during the performance period of such award that affect the applicable performance objectives.

*Transferability.* Awards under the 2014 Plan may not be transferred except by will or by the laws of descent and distribution, unless (for awards other than ISOs) otherwise provided by our Compensation Committee.

*Corporate Transactions.* In the event of a consolidation, merger or similar transaction, a sale or transfer of all or substantially all of the Company's assets or a dissolution or liquidation of the Company (each, a "***Covered Transaction***"), our Compensation Committee may, among other things, provide for the continuation or assumption of outstanding awards, for new grants in substitution of outstanding awards, for the accelerated vesting or delivery of shares under awards or for a cash-out of outstanding awards, in each case on such terms and with such restrictions as it deems appropriate.

Except as our Compensation Committee may otherwise determine, awards not assumed will terminate upon the consummation of such Covered Transaction. In the event of a Covered Transaction other than a liquidation or dissolution of the Company, all outstanding awards held by our non-employee directors will accelerate and vest in full.

*Adjustment*. In the event of certain corporate transactions (including, but not limited to, a stock dividend, stock split or combination of shares, recapitalization or other change in the Company's capital structure that

*** 

constitutes an equity restructuring within the meaning of ASC 718), our Compensation Committee will make appropriate adjustments to the maximum number of shares that may be delivered under and the individual limits included in the 2014 Plan, and will also make appropriate adjustments to the number and kind of shares of stock or securities subject to awards, the exercise prices of such awards or any other terms of awards affected by such change. Our Compensation Committee may also make the types of adjustments described above to take into account distributions to stockholders and events other than those listed above if it determines that such adjustments are appropriate to avoid distortion in the operation of the plan.

*Amendment and Termination*. Our Compensation Committee can amend the 2014 Plan or outstanding awards, or terminate the 2014 Plan as to future grants of awards, except that our Compensation Committee will not be able alter the terms of an award if it would affect materially and adversely a participant's rights under the award without the participant's consent (unless expressly provided in the 2014 Plan or reserved by our Compensation Committee at the time of grant). Stockholder approval will be required for any amendment to the extent such approval is required by law, including the Code or applicable stock exchange requirements.

**Federal Income Tax Consequences Under 2014 Plan**

The following is a summary of some of the material federal income tax consequences associated with the grant and exercise of awards under the 2014 Plan under current federal tax laws and certain other tax considerations associated with awards under the 2014 Plan. The summary does not address tax rates or non-U.S., state or local tax consequences, nor does it address employment-tax or other federal tax consequences except as noted.

*Restricted Stock*. A participant who is awarded or purchases shares subject to a substantial risk of forfeiture generally does not have income until the risk of forfeiture lapses. When the risk of forfeiture lapses, the participant has ordinary income equal to the excess of the fair market value of the shares at

that time over the purchase price, if any, and a corresponding deduction is generally available to the Company. However, a participant may make an election under Section 83(b) of the Code to be taxed on restricted stock when it is acquired rather than later, when the substantial risk of forfeiture lapses. An 83(b) election must be made not later than thirty (30) days after the transfer of the shares to the participant and must satisfy certain other requirements. A participant who makes an effective 83(b) election will realize ordinary income equal to the fair market value of the shares as of the time of acquisition less any price paid for the shares. A corresponding deduction will generally be available to the Company. Fair market value for this purpose is determined without regard to the forfeiture restrictions. If a participant makes an effective 83(b) election, no additional income results by reason of the lapsing of the restrictions.

For purposes of determining capital gain or loss on a sale of shares awarded under the 2014 Plan, the holding period in the shares begins when the participant realizes taxable income with respect to the transfer. The participant's tax basis in the shares equals the amount paid for the shares plus any income realized with respect to the transfer. However, if a participant makes an effective 83(b) election and later forfeits the shares, the tax loss realized as a result of the forfeiture is limited to the excess of what the participant paid for the shares (if anything) over the amount (if any) realized in connection with the forfeiture.

*ISOs.* In general, a participant realizes no taxable income upon the grant or exercise of an ISO. However, the exercise of an ISO may result in an alternative minimum tax liability to the participant. With some exceptions, a disposition of shares purchased under an ISO within two years from the date of grant or within one year after exercise produces ordinary income to the participant (and generally a deduction to the Company) equal to the value of the shares at the time of exercise less the exercise price. Any additional gain recognized in the disposition is treated as a capital gain for which the Company is not entitled to a deduction. If the participant does not dispose of the shares until after the expiration of these one and two-year holding periods, any gain or loss recognized upon a subsequent sale is treated as a long-term capital gain or loss for which the Company is not entitled to a deduction.

*NSOs.* In general, a participant has no taxable income upon the grant of an NSO but realizes income in connection with exercise of the option in an amount equal to the excess (at time of exercise) of the fair market

***

value of the shares acquired upon exercise over the exercise price. A corresponding deduction is generally available to the Company. Upon a

subsequent sale or exchange of the shares, any recognized gain or loss is treated as a capital gain or loss for which the Company is not entitled to a deduction. An ISO that is exercised more than three months after termination of employment (other than termination by reason of death) is generally treated as an NSO. ISOs are also treated as NSOs to the extent they first become exercisable by an individual in any calendar year for shares having a fair market value (determined as of the date of grant) in excess of $100,000.

*SARs*. The grant of a SAR does not itself result in taxable income, nor does taxable income result merely because a SAR becomes exercisable. In general, a participant who exercises a SAR for shares of stock or receives payment in cancellation of a SAR will have ordinary income equal to the amount of any cash and the fair market value of any stock received. A corresponding deduction is generally available to the Company.

*Restricted Stock Units*. The grant of a restricted stock unit does not itself generally result in taxable income. Instead, the participant is taxed upon vesting (and a corresponding deduction is generally available to the Company), unless he or she has made a proper election to defer receipt of the shares (or cash if the award is cash settled) under Section 409A of the Code ("***Section 409A***"). If the shares delivered are restricted for tax purposes, the participant will instead be subject to the rules described above for restricted stock.

*Section 162(m)*. Stock options, SARs and certain performance awards under the 2014 Plan are generally intended to be exempt or eligible for exemption from the deductibility limits of Section 162(m). However, as discussed above in "Reasons for Seeking Stockholder Approval," the Compensation Committee will have discretionary authority to provide compensation that is not exempt from the limits on deductibility under Section 162(m).

*Section 409A*. Section 409A imposes an additional 20% income tax, plus, in some cases, a further income tax in the nature of interest, on nonqualified deferred compensation that does not comply with deferral, payment-timing and other formal and operational requirements specified in Section 409A and related regulations and that is not exempt from those requirements. Stock options and SARs granted under the 2014 Plan are intended to be exempt from Section 409A. The 2014 Plan gives the Compensation Committee the flexibility to prescribe terms for other awards that are consistent with the requirements of, or an exemption from, Section 409A.

*Certain Change of Control Payments*. Under Section 280G of the Code, the vesting or accelerated exercisability of options or the vesting and payments of other awards in connection with a change of control of a corporation may be required to be valued and taken into account in determining whether

participants have received compensatory payments, contingent on the change in control, in excess of certain limits. If these limits are exceeded, a substantial portion of amounts payable to the participant, including income recognized by reason of the grant, vesting or exercise of awards, may be subject to an additional 20% federal tax and may be non-deductible to the Company.

***

**New Plan Benefits**

Other than certain restricted stock units granted contingent on approval of the 2014 Plan by our stockholders (the "***Contingent RSU Grants***"), the Compensation Committee will have full discretion to determine the number and amount of awards to be granted to employees under the 2014 Plan, subject to the terms of the plan. Therefore, other than the Contingent RSU Grants, which are set forth in the table below, the future benefits or amounts that would be received by the executive officers and the groups named in the table below under the 2014 Plan are not determinable at this time.

| Name and Position | Dollar Value(1) | Number of Units |
|---|---|---|
| Keith A. Katkin, President and Chief Executive Officer | $1,006,425 | 354,375 |
| Rohan, Palekar Senior Vice President Chief Commercial Officer | $   351,450 | 123,750 |
| Joao Siffert, M.D. Senior Vice President, Research and Development, Chief Scientific Officer | $   351,450 | 123,750 |
| Christine G. Ocampo Vice President, Finance | $   126,025 | 44,375 |
| Executive Group | $1,835,350 | 646,250 |
| Non-Executive Director Group | — | — |
| Non-Executive Officer Employee Group | $2,212,616 | 779,090 |

(1) Dollar value for the Contingent RSU Grants reflects the $2.84 closing price of our common stock on December 13, 2013, the date the awards were granted, contingent upon stockholder approval of this Proposal No. 4.

47.    The Proxy, however, is deficient in its disclosure regarding Proposal 4, as follows:

- The dilutive impact of issuing the requested additional shares may have on existing shareholders, including a burn rate and overhang analysis. The Board fails to disclose any concrete estimate of the dilutive effect that the Company's stockholders

can expect from the issuance of up to 17,000,000 additional shares;

- The projected stock grants under consideration for executives and directors and the Company's historical grant practices;

- The quantitative data used by the Board to determine the number of additional shares requested to be authorized. While the Proxy at page 12 recommends that the Company's shareholders approve the authorization of an additional 17,000,000 shares, the Proxy fails to disclose what the Board considered before recommending that the Company's shareholders approve these additional shares;

- The criteria or measures which the Compensation Committee relied upon when issuing Stock Appreciation Rights or Restricted Stock. The Proxy at pages 14-15 provides that the Plan "provides for the award of stock options, SARs, restricted stock, RSUs, dividend equivalents, performance share awards, performance stock units, stock payments, deferred stock and performance-based awards or any combination thereof," but the Proxy fails to disclose the criteria used by the Board to grant such awards.

Not only is the Proxy materially misleading and incomplete for the reasons stated above, but it also deficient in its §162(m) disclosures as well.

48.    The Proxy is deficient in its disclosures regarding §162(m), as follows:

- The Proxy falsely represents to shareholders that the Company's compensation programs allow the Compensation Committee to award tax-deductible performance-based compensation under §162(m);

- There is no mention of the Board's decision not to seek shareholder reapproval of the 2005 Plan at the 2011, 2012, or 2013 Annual Meeting in order to regain "shareholder-approval" status for purposes of §162(m);

- The Board fails to disclose any tax liability incurred as a result of the expiration of "shareholder-approval" status for purposes of §162(m);

- The Proxy erroneously states that deductions under Section 162(m) are permitted up to $2 million when the law limits such deductions to $1 million.

49.    It is clear that Avanir has failed to disclose material information in its Proxy.   Absent this Court's intervention, Avanir's public shareholders will be irreparably harmed by being forced to cast an uninformed vote in favor of Proposal 4 without full and adequate disclosure.   Monetary damages will not compensate shareholders for the value of material information necessary for the Company's public shareholders' right to cast this fully-informed vote.

50.    Accordingly, the Shareholder Vote should be enjoined until the Company provides adequate disclosures regarding Proposal 4 and complies with IRS§ 162(m).

### FIRST CAUSE OF ACTION
### CLAIMS FOR BREACHES OF FIDUCIARY DUTIES AGAINST THE INDIVIDUAL DEFENDANTS

51.    Plaintiff repeats and realleges each allegation set forth herein.

52.    The Individual Defendants have violated fiduciary duties of care, loyalty, good faith, and complete candor owed to Avanir Pharmaceuticals' public shareholders.

53.    Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding Proposal 4.

54.    By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the

exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

55.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury if they are forced to vote on Proposal 4 without adequate information.

56.     Plaintiff and the members of the Class have no adequate remedy at law.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER**
**(INDIVIDUAL CLAIMS AGAINST ALL DEFENDANTS)**

57.     Plaintiff repeats and realleges each allegation set forth herein.

58.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

59.     Defendants have issued the 2013 Proxy.  The 2013 Proxy violates Section 14(a) and Rule 14a-9 because, as described above, it contains false and misleading statements.

60.     The misrepresentations and omissions in the 2013 Proxy are material to Plaintiff, and Plaintiff will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the 2013 Annual Meeting.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class and against Defendants as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

B.    Declaring and decreeing that the Proxy with regard to Proposal 4 was issued in violation of federal law, Section 162(m) and/or breach of the fiduciary duties of the Individual Defendants and is therefore unlawful;

C.    Enjoining Defendants from accepting votes or consummating the Shareholder Vote on Proposal 4, until the Company takes corrective measures;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: January 13, 2014

FARUQI & FARUQI, LLP

By:
David E. Bower

10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Tel: (424) 256-2884
Fax: (424) 256-2885

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Avenue, Tenth Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Cormac J. Carney_____ and the assigned Magistrate Judge is _____Robert N. Block_____ .

The case number on all documents filed with the Court should read as follows:

## 8:14-cv-00053-CJC(RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 14, 2014_____                    By _APEDRO_____
Date                                                                    Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)                         NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

ROBERT MASTERS, Individually And On Behalf Of All Others Similarly Situated,

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

AVANIR PHARMACEUTICALS, INC., et al.,

**(b) County of Residence of First Listed Plaintiff** San Diego County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Orange County
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

David E. Bower, FARUQI & FARUQI, LLP, 10866 Wilshire Boulevard, Suite 1470, LA, CA 90024. Telephone: (424) 256-2884.

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

FAX FILING

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ over $5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) Federal Securities Exchange Act of 1934, 15 U.S.C. section 78aa, and Federal Internal Revenue Service 162(m) violations, and breaches of fiduciary duties against the individual defendants.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL INJURY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☒ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number: SACV14-00053

CV-71 (11/13)           CIVIL COVER SHEET           Page 1 of 3

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court?<br><br>☐ Yes   ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action?<br><br>☐ Yes   ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C<br><br>☒ only 1 answer in Column C and no answers in Column D<br><br>Your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question D, below.<br><br>If none applies, answer question C2 to the right.  ➡ | ☐ 2 or more answers in Column D<br><br>☐ only 1 answer in Column D and no answers in Column C<br><br>Your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question D, below.<br><br>If none applies, go to the box below.  ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | Southern |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**      DATE: January 13, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |