UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT MASTERS, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>  vs.<br><br>AVANIR PHARMACEUTICALS, INC., KEITH A. KATKIN, CRAIG A. WHEELER, CORINNE H. NEVINNY, DENNIS G. PODLESAK, HANS E. BISHOP, DAVID J. MAZZO, and SCOTT M. WHITCUP,<br><br>            Defendants. | Case No.: SACV 14-00053-CJC(RNBx)<br><br><br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

## I. INTRODUCTION

This shareholder class action was filed to enjoin a shareholder vote because of allegedly inadequate disclosures about a proposed equity compensation plan in Defendant Avanir Pharmaceuticals, Inc.'s ("Avanir") 2014 proxy (the "Proxy"). The Proxy disclosed that the company's only existing incentive plan was running out of shares

available to be issued to employees — it disclosed that the board had issued roughly 3 to 3.5 million shares per year in each of the prior three fiscal years, and that only 191,126 shares remained as of December 13, 2013.  In order to allow the company to continue to award equity-based compensation, the Proxy requested shareholder approval of the proposed plan, which would authorize an additional 17 million shares for issuance to employees.  According to the Proxy, this reserve of shares would allow the company to continue to make awards at historical average annual rates for the next four years.

Plaintiff Robert Masters ("Plaintiff") alleges that the Proxy misleadingly fails to state that the prior incentive plan is no longer eligible to allow the company to deduct certain executive compensation under Internal Revenue Code ("IRC") § 162(m).  He also alleges that the Proxy omits information regarding the reasons for and effects of the proposed plan, including how, and at what rate, the plan may dilute shareholders' interests.  Plaintiff asserts claims against Defendants[1] for breach of fiduciary duties and violation of § 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9.  Before the Court is Plaintiff's Motion for Preliminary Injunction, which seeks to enjoin a vote at Avanir's annual stockholder meeting scheduled to be held on February 12, 2014.[2]  (Dkt. No. 6 ["Mot. Prelim. Inj."].)

---

[1] The Complaint names Keith A. Katkin, Craig A. Wheeler, Corinne H. Nevinny, Dennis G. Podlesak, Hans E. Bishop, David J. Mazzo, and Scott M. Whitcup (collectively, the "Individual Defendants," and together with Avanir, "Defendants").

[2]  Plaintiff originally filed the instant motion on January 20, 2014 and indicated, without specifying a hearing date, that the motion would be heard before Magistrate Judge Robert N. Block.  The following day, Plaintiff filed a corrected notice of motion for preliminary injunction, which indicated that the motion would be heard by this Court on February 10, 2014 at 1:30 p.m.  (Dkt. No. 7.)  Because the motion was not filed within sufficient time to be presented as a regularly noticed motion in accordance with the Local Rules of this Court, and because the parties wished to have the matter heard by the Court before Avanir's shareholder vote scheduled for February 12, 2014, the parties stipulated to shortened notice and an expedited briefing schedule.  (Dkt. No. 9.)  The Court granted the parties' stipulation. (Dkt. No. 15.)  In accordance with the stipulation, Plaintiff filed a supplemental brief on January 30, 2014, Defendants filed an opposition brief on February 5, 2014, and Plaintiff filed a reply brief on February 7, 2014.  (Dkt. Nos. 16, 18, 22.)

After considering all the evidence presented by the parties and the arguments of counsel, the Court DENIES Plaintiff's motion.  The Proxy provides a full and fair disclosure of the purpose, rationale, and effects of the proposed plan.  Each of the disclosures that Plaintiff seeks is factually mistaken, is already disclosed in the Proxy, or is not material to investors.  To require more would either risk affirmatively misleading shareholders or would bury shareholders in needless information and summaries.

## II.  BACKGROUND

Avanir is a publicly-held pharmaceutical company that acquires, develops, and commercializes therapeutic products for the treatment of central nervous system disorders.  (Dkt. No. 1 [Class Action Compl. ("Compl.")] ¶¶ 11, 29.)  Avanir is incorporated in Delaware.  (Compl. ¶ 11.)  The Individual Defendants include all of the members of Avanir's board of directors as of the date the Complaint was filed.  (*Id.* ¶¶ 12−18.)  Plaintiff is a holder of 10,000 shares of Avanir stock.  (*See* Dkt. No. 5, ¶ 4.)  Avanir currently has approximately 152 million shares of common stock outstanding.  (Compl. ¶ 22.)

The controversy here arises from Avanir's Proxy, which was submitted to Avanir shareholders on December 30, 2013 in anticipation of Avanir's annual stockholder meeting scheduled to be held on February 12, 2014.  (*Id.* ¶¶ 1−2.)  The Proxy solicits shareholder approval of a number of proposals, including Proposal 4, the only proposal at issue here.  (*Id.* ¶ 2.)  Proposal 4 seeks approval of the 2014 Incentive Plan ("2014 Plan"), which would increase the number of shares that Avanir may award in the future by 17 million shares.  (*Id.*; *see also* Dkt. No. 6-2 Ex. C ["Proxy"] at 13.)

At present, Avanir has only one existing equity incentive plan: the 2005 Equity Incentive Plan (the "2005 Plan").  (Proxy at 12.)  The 2005 Plan, which was approved by

Avanir's shareholders, allows Avanir to grant non-statutory stock options, stock appreciation rights, stock awards, and cash-based incentive awards to employees, directors, and consultants. (*Id.* at 13; Dkt. No. 21 [Decl. of Christine G. Ocampo in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Ocampo Decl.")] Ex. B ["2005 Plan"].) Each year, Avanir files with the Securities and Exchange Commission ("SEC") an annual report on Form 10-K disclosing the number of shares issued under the 2005 Plan. (*See* Dkt. No. 19 [Decl. of Robert M. Daines in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Daines Decl.")] ¶ 22.) As of December 13, 2013, the 2005 Plan had 191,126 shares available for Avanir to grant as equity awards. (Proxy at 12.) In fiscal years 2011, 2012, and 2013, Avanir made equity awards under its existing equity incentive plans totaling 2,993,888 shares, 3,501,642 shares, and 3,095,910 shares, respectively. (*Id.* at 13.) The Proxy states that Avanir currently does not have a sufficient number of remaining shares available under the 2005 Plan to compensate its employees in line with past practice. (*Id.* at 12, 13; *see also* Ocampo Decl. ¶ 24.) According to the Proxy, Avanir's ability to offer equity incentive awards to employees is necessary to ensure that its employees, executive officers, and directors remain with the company, as well as to ensure that their interests are aligned with those of the company's stockholders. (*See* Proxy at 12.)

The 2014 Plan would replenish Avanir's share reserves. It would increase the number of shares of Avanir common stock that may be awarded by 17 million shares. (*Id.* at 14.) The Proxy states that this amount of shares would allow the company to continue to issue shares to employees at historic rates for at least four years. (*Id.* at 13.) The 2014 Plan would also expand the types of tax-deductible equity awards that the Compensation Committee may grant to covered executives to include stock awards (restricted stock and restricted stock units) and cash-based awards. (*Id.* at 14.) The 2014 Plan is to be administered by Avanir's Compensation Committee, which is composed of outside directors on the company's board. (*Id.*) The Compensation Committee "has the authority to, among other things, interpret the 2014 Plan, determine eligibility for, grant

and determine the terms of awards under the 2014 Plan, and to do all things necessary or appropriate to carry out the purposes of the 2014 Plan." (*Id.*)

The 2014 Plan states that some compensation to top executives may be intended to qualify as "performance-based compensation" for purposes of IRC § 162(m). (*Id.* at 15.) As discussed in greater detail below, § 162(m) provides that a corporation may only deduct more than $1 million of compensation paid to covered executives to the extent such compensation qualifies as "performance based," as defined by the statute and applicable Treasury Regulations.

The board designed the 2014 Plan with the assistance of a hired compensation consultant, Radford. (Dkt. No. 20 [Decl. of Jesus Varela in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Varela Decl.")] ¶ 6.)  Radford was specifically tasked with determining the number of shares that Institutional Shareholder Services, Inc. ("ISS") would support for reservation under the 2014 Plan. (*Id.* ¶ 8.)  ISS is a proxy advisory service. (*See* Dkt. No. 18-3 [Decl. of Travis Biffar in Supp. of Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Biffar Decl.")] Ex. H.)  In making that determination, Radford used a subscription to proprietary software offered by ISS Corporate Services, Inc., which includes modeling for "shareholder value transfer," a metric used by ISS in reviewing proxy proposals. (Varela Decl. ¶ 7.)  Radford also advised on other criteria that the 2014 Plan would need to satisfy before ISS would recommend in favor of the plan. (*See* Dkt. No. 16-1 Ex. B ["Oct. 2013 Radford Presentation"] at AVANIR 000022.)

The country's two principal proxy advisory services, ISS and Glass Lewis & Co. ("Glass Lewis"), have supported the 2014 Plan and have not objected to the disclosures. (Biffar Decl. Exs. H, I.)  As of February 4, 2014, votes representing over 38 million shares (over 25% of total outstanding shares) had been received, and over 90% of the shares voted were for approval of the 2014 Plan. (Ocampo Decl. ¶ 40.)

Plaintiff asserts that the Proxy is false and misleading.  First, he claims that the Proxy is misleading because it "states that if Proposal 4 is not approved then the Company may be limited on its ability to make tax deductible performance awards under Section 162(m) of the Internal Revenue Code."  (Mot. Prelim. Inj. at 1.)  According to Plaintiff, this statement misleads investors by failing to disclose that Avanir "is already in default of its 2005 Plan and is not eligible to make deduction under Section 162(m) since 2011."  (*Id.*)  Plaintiff further contends that the Proxy "does not provide proper disclosure of information regarding the reasons for, consideration and effects of Proposal 4, including how, and at what rate, the Plan may dilute their public shareholders."  (*Id.* at 2.)  Because of these allegedly inadequate disclosures, Plaintiff claims that the Individual Defendants have breached their fiduciary duties under Delaware law and that Defendants have violated rules promulgated by the SEC under § 14(a) of the Exchange Act.  (*Id.* at 1–2.)

## III. ANALYSIS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).[3]  Alternatively, " '[s]erious questions going to the merits' and a balance of hardships that

---

[3]  After first citing *Winter* for the federal standard for issuing a preliminary injunction, Plaintiff then contends that Delaware law controls the standard for issuing a preliminary injunction.  (Mot. Prelim. Inj. at 9 & n.3 ("Because Avanir is incorporated in Delaware, Delaware substantive law applies to the underlying legal requirements of establishing an entitlement to injunctive relief.").)  That is incorrect.  Because the standard for issuing a preliminary injunction is procedural, a federal court is bound to apply the federal standard even if the underlying claims arise under state substantive law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The Court will thus look exclusively to federal law to determine how to apply *Winter*'s four elements to Plaintiff's federal and Delaware claims.  Of course, the Court applies Delaware law when determining whether Plaintiff is likely to prevail on the merits of his claim that Defendants breached their fiduciary duties.

tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A preliminary injunction is a drastic remedy that may only be awarded upon a clear showing that the moving party is entitled to relief.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).  Here, Plaintiff fails to make a clear showing of any of the prerequisites to obtaining preliminary injunctive relief.

## A.  Likelihood of Success on the Merits

Plaintiff has failed to clearly show that he is likely to succeed on the merits of his claims.  The Complaint asserts two claims: (1) a claim against Defendants for violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n *et seq.*, and Rule 14a-9 promulgated thereunder, and (2) a claim against the Individual Defendants for breach of their fiduciary disclosure obligations under Delaware law.  (Compl. ¶¶ 51–60.)

Section 14(a) of the Exchange Act makes it unlawful for anyone to solicit proxies that are in contravention of rules and regulations promulgated by the SEC.  15 U.S.C. § 78n(a).  Rule 14a-9, promulgated pursuant to § 14(a), provides in relevant part:

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . which, at the time . . . it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a).  A misrepresentation or omission is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  "In addition, a Section 14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link

in the accomplishment of the proposed transaction." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (footnote and citation omitted). Importantly, "Section 14(a) and Rule 14a-9 do not obligate corporate officials to present, no matter how unlikely, every conceivable argument against their own recommendations. They instead require that officials divulge all known material facts so that shareholders can make informed choices." *Id.* at 1024.

Under Delaware law, "directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1993). This obligation extends to proxy statements made in anticipation of shareholder action. *Id.* at 85. In such cases, "[t]he essential inquiry is whether the alleged omission or misrepresentation is material." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994). Delaware has adopted the federal definition of materiality articulated in *TSC Industries*:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . . It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Arnold*, 650 A.2d at 1277 (alteration in original; emphasis omitted) (quoting *TSC Indus.*, 426 U.S. at 449); *see also Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (1985) (adopting *TSC Industries* standard as law of Delaware).

Plaintiff identifies a number of alleged misrepresentations or omissions in the Proxy. First, Plaintiff claims that the Proxy indicates that it has a valid plan in place that

allows the company to grant tax-deductible performance-based compensation under IRC § 162(m) when in fact the existing plan allegedly lapsed in 2011.  (Mot. Prelim. Inj. at 2.)  Second, he contends that "the Company does not provide proper disclosure of information regarding the reasons for, consideration and effects of Proposal 4, including how, and at what rate, the Plan may dilute their public shareholders."  (*Id.*)  The Court finds that the facts that Plaintiff seeks to have disclosed are either untrue or immaterial.  Either way, Plaintiff is unlikely to prevail on his claims.

### 1.   Disclosures Regarding Ability to Deduct Under IRC § 162(m)

Plaintiff first contends that the Proxy is misleading because it states that "if Proposal 4 is not approved then the Company may be limited on its ability to make tax deductible performance awards" under IRC § 162(m).  (*Id.* at 1.)  This statement is misleading, he contends, because Avanir is allegedly "already in default of its 2005 Plan and is not eligible to make deduction under Section 162(m) since 2011."  (*Id.*)  Plaintiff reiterates this argument in his supplemental brief.  (Dkt. No. 16 ["Pl.'s Supplemental Mem."] at 1–2.)  Plaintiff's argument is misguided.  There is no evidence that the 2005 Plan is in lapse.

Section 162(m) contains a permissive tax deduction that corporations may elect to use.  Under § 162(m), a publicly traded corporation is generally limited to deducting $1 million in compensation paid to covered executives in a tax year.  26 U.S.C. § 162(m)(1), (m)(3); *see also* Biffar Decl. Ex. B ["I.R.S. Notice 2007-49"] at 1 (stating that covered executives generally include the company's CEO and three highest compensated officers as of the end of a tax year, excluding the CEO and chief financial officer).)  However, compensation paid to covered executives may be exempt from the $1 million limit if it

//

//

qualifies as performance-based compensation.[4]  *See* 26 U.S.C. § 162(m)(4)(C).  This exemption only applies if (i) the performance goals are determined by a compensation committee of the company's board of directors which is comprised solely of outside directors, (ii) the material terms under which the compensation is to be paid are approved by a majority of the shareholders, and (iii) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were satisfied.  *Id.* § 162(m)(4)(C)(i)−(iii).[5]

Importantly, applicable Treasury Regulations provide the general rule that "[o]nce the material terms of a performance goal are disclosed to and approved by shareholders, *no additional disclosure or approval is required* unless the compensation committee changes the material terms of the performance goal."  26 C.F.R. § 1.162-27(e)(4)(vi) (emphasis added).  If, however, the compensation committee retains authority to change the material terms of a performance goal after shareholder approval, the material terms of the performance goal must be reapproved by shareholders every five years.  *Id.*  But if the compensation committee neither changes the material terms of a performance goal nor has the authority to do so after shareholder approval, no further shareholder approval is required for the compensation committee to continue granting qualifying performance-based compensation under a plan that was previously approved by shareholders.

//

---

[4]  A stock option is deemed to constitute performance-based compensation under § 162(m) if (i) the option is granted by a corporation's compensation committee; (ii) the plan under which the option is granted states the maximum number of options that may be granted during a specified period to any employee; and (iii) the amount of compensation that the employee will receive under the option is based solely on an increase in the value of the stock after the date of grant.  26 C.F.R. § 1.162-27(e)(2)(vi).

[5]  The "material terms" that must be approved by a corporation's shareholders include (i) the employees eligible to receive the compensation; (ii) a description of the business criteria on which the performance goal is based; and (iii) either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained.  26 C.F.R. § 1.162-27(e)(4)(i).

Plaintiff mistakenly assumes that the 2005 Plan *must be* subject to the five-year re-approval requirement.  (*See* Pl.'s Supplemental Mem. at 2.)  But Plaintiff nowhere asserts that Avanir's Compensation Committee has changed, or has discretion to change, the material terms of the performance goals under the 2005 Plan.  Thus, Avanir remains capable of granting stock options to its covered executives under the 2005 Plan that may be deductible under § 162(m).  The Proxy makes no representation to the contrary.

Plaintiff also contends that Avanir should be required to "[a]ffirmatively state what, if any, tax liability Avanir has incurred as a result of failing to maintain compliance of its 2005 Plan with Section 162(m)."  (*Id.* at 3.)  As discussed above, this contention is mistaken because there is no indication that Avanir failed to maintain compliance of the 2005 Plan with § 162(m).  Moreover, the Proxy does not state that the company *will* qualify for deductions under IRC § 162(m); rather, it states that "approval of the 2014 Plan would *preserve [Avanir's] ability* to grant a range of tax-efficient stock-based incentive awards," including performance-based compensation that qualifies under § 162(m).  (Proxy at 13 (emphasis added).)  The Proxy likewise states that "even with stockholder approval there can be no guarantee that compensation will be treated as exempt performance-based compensation under Section 162(m)."  (*Id.*)

In any event, the Proxy clearly states that "no covered executive's compensation for Section 162(m) purposes exceeded $1.0 million."  (*Id.* at 41.)  Additionally, Defendants represent that Avanir did not take any deductions under § 162(m) during the 2011, 2012, or 2013 tax years because significant net operating losses precluded its ability to take deductions under other provisions of the IRC.  (*See* Ocampo Decl. Ex. I ["FY 2013 Form 10-K"] at F-16 (noting that "[s]ince the Company has a net operating loss carry-forward as of September 30, 2013, 2012, and 2011, no excess tax benefits for tax deductions related to share-based awards were recognized in the accompanying consolidated statements of operations").)  If any investor desired to know this

information, the information is reasonably available.  *See In re Micromet, Inc. S'holders Litig.*, No. 7197-VCP, 2012 WL 681785, at *12 (Del. Ch. Feb. 29, 2012) (no duty to disclose where "any investor who desired to know . . . could find this information in [the company's] publicly-filed Form 13F").

        In sum, the Proxy is true and not misleading on its face.  It states that the 2014 Plan would preserve Avanir's ability to take deductions under § 162(m); it does not guarantee that such deductions will be taken; it does not suggest that such deductions have been taken in the past.  Accordingly, the Court does not find it substantially likely that disclosure of which corporate deductions Avanir has or has not taken in prior years would have been considered by the reasonable investor as important in deciding how to vote on a proposal that would merely preserve the company's ability to take a deduction under § 162(m).  *See Arnold*, 650 A.2d at 1277 (quoting *TSC Indus.*, 426 U.S. at 449).

## 2.  Disclosures Regarding Reasons for and Effects of Proposal

        Plaintiff further contends that "the Company does not provide proper disclosure of information regarding the reasons for, consideration and effects of Proposal 4."  (Mot. Prelim. Inj. at 2.)  Specifically, Plaintiff contends that the Proxy is materially misleading because it fails to disclose (1) the dilutive impact that issuing the requested additional shares may have on existing shareholders, including a burn rate and overhang analysis; (2) details about Avanir's historical and projected stock grant practices; (3) the quantitative data Avanir's board used when determining how many additional shares it would ask shareholders to authorize; and (4) the criteria or measures that Avanir's Compensation Committee relied upon when issuing stock appreciation rights or restricted stock.  (*Id.* at 7−8.)

//

As a preliminary matter, the Proxy sufficiently discloses the reasons for and consideration of Proposal 4.  As disclosed in the Proxy, the Committee ultimately determined that "the availability of 17,000,000 shares would provide a sufficient additional number of shares to enable the Company to continue to make awards at historical average annual rates for the next four years."  (Proxy at 13.)  Further, the Proxy discloses the actual annual rates for 2011, 2012, and 2013.  (*Id.*)  Nothing more is required.  As to the specific items that Plaintiff claims are wrongfully omitted, none of these facts need be disclosed.

### a.   Dilutive Impact, Overhang, and Burn Rate

The information needed to determine dilutive impact, overhang, and burn rate is disclosed in the Proxy.  As to Proposal 4's dilutive impact, the proposal's general dilutive impact is stated on the face of the Proxy: the Proxy explicitly provides that the 17 million shares proposed for future awards under the 2014 Plan is 11.2% of stock outstanding.  (*Id.* at 13.)  Similarly, the "overhang" — which refers to the amount of potential dilution in the value of currently held shares that could result from future issuance of reserved shares — is readily ascertainable from the Proxy.  Page 13 of the Proxy states that as of December 13, 2013, Avanir had 12,482,398 shares subject to outstanding awards.  The Proxy also discloses the number of outstanding shares at 152,111,721.  (*Id.* at 1.)  The current overhang is thus calculated as the shares subject to outstanding awards (12,482,398) divided by total shares outstanding (152,111,721).  Finally, the "burn rate" — the speed at which a company uses shares available for grant under its equity compensation plans — can also be easily calculated.  For example, Avanir's burn rate for the past three years can be calculated as the disclosed total number of shares subject to equity awards granted during each fiscal year, (*see id.* at 13), divided by the weighted average number of shares outstanding during that fiscal year, (*see* FY 2013 Form 10-K at 34).  As to Avanir's future burn rate, Defendants are not required to disclose speculative

projections; to do so risks affirmatively misleading investors.  (*See* Proxy at 18 (providing that "future benefits or amounts that would be received by the executive officers and [others] under the 2014 Plan are not determinable" at the time of the filing of the Proxy).)

The Court finds no support to Plaintiff's conclusory assertion that "Defendants . . . overstate the ease of finding the necessary raw data to calculate the dilutive effect on Avanir shareholders caused by Proposal 4, or how shareholders can calculate the burn rate or the overhang analysis."  (Dkt. No. 22 ["Pl.'s Reply"] at 7.)  While it may be true that shareholders are not "required to search out material information 'buried' in publically filed documents with the SEC," (*id.* at 7−8), Plaintiff does not show how any of the inputs to these calculations are "buried" in SEC filings.  With the exception of burn rate, the calculations that Plaintiff seeks to have disclosed are readily derived from inputs found on the face of the Proxy.  As to the burn rate, Plaintiff has made no showing that the weighted average number of outstanding shares is "buried" in any public filing.  To the contrary, such basic information as the number of shares outstanding is likely known by investors to be readily available in a company's major public filings.

## b.  Historical and Projected Grant Practices

Plaintiff further contends that the projected stock grants under consideration for executives and directors, as well as Avanir's historical grant practices, is material information omitted from the Proxy.  (Mot. Prelim. Inj. at 8.)  As to the projected stock grants, such information is necessarily speculative and need not be disclosed.  For this very reason, the Proxy states that "the Compensation Committee will have full discretion to determine the number and amount of awards to be granted to employees under the 2014 Plan, subject to the terms of the Plan," and that "future benefits or amounts that would be received by the executive officers . . . under the 2014 Plan are not

determinable." (Proxy at 18.)  As to historical practices, Plaintiff does not explain what specific details regarding "historical grant practices" are omitted.  However, the Proxy summarizes compensation paid, awarded, or earned during fiscal years 2011 through 2013 for certain executives.  Additionally, page 18 of the Proxy shows restricted stock units granted to executives, officers, and directors contingent upon approval of the 2014 Plan.  (*See* Daines Decl. ¶ 22.)  Thus, the Proxy does not omit any material information regarding Avanir's historical and projected grant practices.

### c. Radford Analyses

Plaintiff also argues that the Proxy fails to disclose what analyses Radford performed in support of its advice and what that advice was.  (Pl.'s Supplemental Mem. at 3−4.)  Radford was specifically tasked with determining the number of shares that ISS would support for reservation under the 2014 Plan.  (Varela Decl. ¶ 8.)  In making that determination, Radford used a subscription to proprietary software offered by ISS Corporate Services, Inc., which includes modeling for "shareholder value transfer," a metric used by ISS in reviewing proxy proposals.  (*Id.* ¶ 7.)  Radford also advised on other criteria that the 2014 Plan would need to satisfy for ISS to recommend in favor of the plan.  (Oct. 2013 Radford Presentation at AVANIR 000022.)

Essentially, Plaintiff asserts that the vote on Proposal 4 must be enjoined because the board did not disclose summaries of Radford's advice and analyses.  Specifically, Plaintiff claims that Defendants should have disclosed the following analyses performed by Radford:

(1)    Burn rate analysis showing that Avanir's three-year average burn rate is 2.74%, that the industry mean is 3.84%, and that the ISS burn rate limit is 6.70%;

(2)   CEO Pay-for-Performance would pass ISS's test with low levels of concerns and that the company has one- and three-year return of 32% and 10%, respectively; and

(3)   Shareholder value transfer analysis showing 15% value for 17 million shares with 19.5% basic overhang or 16.3% fully diluted overhang.

(Pl.'s Supplemental Mem. at 4.)  But these analyses were performed for the purpose of determining whether ISS would support specific aspects of the 2014 Plan.  Such analyses were prudent because Avanir's board naturally preferred to design the plan so that ISS would recommend in favor of shareholder approval.  But that does not mean that shareholders need summaries of the analyses that went into the board's determination of whether ISS would recommend in favor of the plan.  For example, Radford's shareholder value transfer analysis, which Plaintiff claims should have been disclosed to shareholders, is purely an internal proprietary ISS metric that the proxy advisory firm uses for its own purposes.  (Dkt. No. 18 ["Defs.' Opp'n"] at 19; Varela Decl. ¶ 7.)  Such information need not be disclosed to investors.

The fundamental flaw in Plaintiff's argument is that he essentially deems all information reviewed by the board as material.  If information considered by the board is too voluminous or consists of minutiae, he contends, Defendants must provide a "fair summary" of the information to shareholders.  (*See* Pl.'s Reply at 7.)  But just because a particular analysis was worth considering by the board does not mean that it is material to a reasonable investor.  *See Wayne Cnty. Emps.' Ret. Sys. v. Corti*, 954 A.2d 319, 332 (Del. Ch. 2008) (rejecting argument that the board's reliance on current projections "somehow . . . makes them material").  Internal ISS metrics such as the shareholder value transfer analysis are a prime example — such metrics are relied upon by the board, but those metrics do not "significantly alter the total mix of information already provided" to investors.  *TSC Indus.*, 426 U.S. at 449.  And because such metrics or analyses are not

-16-

material to reasonable investors, the board has no obligation to provide a summary of them to investors.

### d.  Criteria for Issuing SARs or Restricted Stock

Finally, Plaintiff demands disclosure of the criteria or measures that Avanir's Compensation Committee relied upon when issuing stock appreciation rights ("SARs") or restricted stock.  Plaintiff does not cite to any authority that would require Avanir to disclose such information.  Indeed, the Proxy clearly states that "the Compensation Committee will have full discretion to determine the number and amount of awards to be granted to employees under the 2014 Plan, subject to the terms of the Plan," and that "future benefits or amounts that would be received by the executive officers and [others] under the 2014 Plan are not determinable [at the time of the filing of the Proxy]."  (Proxy at 18.)  Thus, the omission of such information is not materially misleading.

### 3.  Disclosures by Avanir's Peer Companies

Defendants support their arguments with an expert analysis, performed by Professor Robert Daines, that reviews whether the disclosures Plaintiff demands are found in the proxy statements of 25 similar companies holding similar votes.  (*See* Daines Decl.)  If such disclosures are rarely provided by similar companies, this would suggest that investors do not broadly view those disclosures as material.

Of the 25 companies Professor Daines reviewed, not one of the companies disclosed all of the information that Plaintiff claims was omitted here.  (*Id.* ¶ 11.)  Additionally, not one of the items of information that Plaintiff claims was omitted was

//
//

found in a majority of the sample companies' proxies.  (*See id.* at 16 tbl. 3.)[6]  Thus, "[t]o enforce Plaintiff's claim that shareholders should not vote without the details he demands, one would need to enjoin the vote at every single company in the sample.  (*Id.* ¶ 31.)

Plaintiff argues that "simply because some corporations have omitted the requested information does not mean it is proper for Defendants to succumb to pure [*sic*] pressure and do the same here."  (Pl.'s Reply at 9.)  The Court disagrees.  Corporate boards are much more directly subject to investor pressure than to peer pressure.  Industry practice is thus relevant to consider because it is reflective of what reasonable investors ultimately demand.  Contrary to Plaintiff's assertion, Professor Daines's findings reveal that the information Plaintiff demands is not material to investors.

## B.  Irreparable Harm

Plaintiff has failed to show irreparable harm.  In the context of motions to enjoin shareholder votes, federal courts in the wake of the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), have rejected the *per se* rule advocated by Plaintiff — that "denying stockholders their right to cast an informed vote constitutes irreparable harm," (Mot. Prelim. Inj. at 16).  *See, e.g.*, *Deborah G. Mallow IRA SEP Inv. Plan v. McClendon*, No. CIV-12-436-M, 2012 WL 2036748, at *3 (W.D. Okla. June 6, 2012) (finding no irreparable harm where plaintiff sought to enjoin a shareholder vote on,

---

[6]  Professor Daines makes the following findings: (1) 1 out of 25 companies disclosed in more detail than Avanir a measure of dilution; (2) 0 out of 25 disclosed in more detail the resulting overhang in percentage terms; (3) 7 out of 25 disclosed in more detail the historical or expected future burn rate of the employee stock plan in percentage terms; (4) 6 out of 25 disclosed in more detail specific projected grants under the proposed employee stock plan; (5) 4 out of 25 disclosed in more detail that their Board relied on burn rate or overhang in determining the number of additional shares requested to be authorized; (6) 1 out of 25 disclosed in more detail a summary of an expert or compensation consultant's opinion; and (7) 3 out of 25 disclosed in more detail specific targets or thresholds for awarding future grants.  (Daines Decl. at 16 tbl. 3.)

*inter alia*, a new incentive compensation plan because the plaintiffs there "[we]re not attempting to enjoin a merger or other corporate activity which would require the Court to 'unscramble the eggs' if preliminary injunctive relief were erroneously withheld").[7] Defendants have represented that, should Plaintiff ultimately prevail on the merits, the vote on Proposal 4 can be nullified and any award can be unwound.  (*See* Defs.' Opp'n at 5.)[8]

In his reply, Plaintiff does not dispute that the vote can be voided.  Instead, he argues, "the Court's ability to later 'invalidate the vote' after the February 12, 2014 shareholder vote is of no moment."  (Pl.'s Reply at 2.)  This is so, he argues, because the Delaware Chancery Court has held that "[b]y their very nature, . . . disclosure claims, if meritorious, involve irreparable harm."  (*Id.* (quoting *Corti*, 954 A.2d at 329).)  The problem with Plaintiff's argument, however, is that it relies on a Delaware court's interpretation of the Delaware preliminary injunction standard.  The Court instead looks to federal law to interpret the standard for finding irreparable harm, an element of a federal procedural rule.  Plaintiff has cited no post-*eBay* federal case adopting the categorical rule that he advocates in the context of shareholder vote injunctions.

Moreover, Plaintiff has fallen far short of proving that the shareholder vote at issue here will result in the kind of complex business transactions that cannot be unwound at a later time.  If Plaintiff succeeds in demonstrating proxy violations, he has adequate remedies.  He will not suffer any irreparable harm if the vote goes forward.

---

[7]  Even *MONY Group Inc. v. Highfields Capital Management, L.P.*, on which Plaintiff relies, (Mot. Prelim. Inj. at 16), specifically declined to adopt a *per se* rule for injunctions in a § 14(a) case.  368 F.3d 138, 147 (2d Cir. 2004).

[8]  To the extent that Plaintiff claims irreparable harm due to dilution of his shares between the time of the shareholder vote and the date on which the Court ultimately decides whether the vote must be invalidated for proxy defects, such dilution is quantifiable and thus remediable by money damages.

### C.  Balance of Equities

The balance of equities tips in Avanir's, not Plaintiff's, favor.  As the Proxy explains, Avanir is facing an imminent shortfall of shares available to award to employees.  Over the last 3 years, Avanir has awarded on average 3.2 million shares per year pursuant to the 2005 Plan.  (Proxy at 13.)  As of December 13, 2013, however, only 191,176 shares remained available for issuance under the 2005 Plan.  (Ocampo Decl. ¶ 18.)  Avanir will soon have insufficient share reserves to compensate its employees and directors in accordance with its past practice and in line with the market for talent in which Avanir competes.  (*Id.* ¶ 24.)

Defendants have also submitted evidence that the 2014 Plan is important to Avanir's ability to return to profitability.  Avanir has had a series of unprofitable years, as indicated by its net operating loss carry-forward of $407.4 million as of September 30, 2013.  (*Id.* ¶ 25.)  And according to the Proxy, "[t]he Board believes that equity-based compensation is a critical part of the Company's compensation program" and that "[s]tockholder approval of the 2014 Plan would allow [Avanir] to continue to attract and retain directors, executives, and other employees with equity incentives."  (Proxy at 13.)  Thus, Defendants contend, if the 2014 Plan is not approved, Avanir could be forced to reallocate its crucial cash reserves to employee compensation, which would undermine its goal of reaching profitability.  (*See* Defs.' Opp'n at 24.)  Defendants have also submitted proof that Avanir may incur total costs of approximately $137,205.86 if it is required to revise the Proxy and postpone to a later date the company's 2014 annual stockholders meeting.  (Ocampo Decl. ¶¶ 41−48.)

In light of the necessity and urgency of this shareholder vote, the balance of equities tips clearly in Defendants' favor and not in that of Plaintiff.

**D.  Public Interest**

Finally, enjoining the shareholder vote here would not be in the public interest. Avanir's board made a good faith effort to disclose precisely the information that reasonable investors would find significant.  That is no easy task — the board must make a full and fair disclosure of information and, at the same time, must not flood the proxy with information that is unnecessary or unwanted by reasonable investors.  Given the difficulty of the board's task, a ruling in Plaintiffs' favor here would have far-reaching adverse implications, not only for Avanir but also for its peers.  Indeed, were the Court to require each of the details Plaintiff demands, one would need to enjoin the vote at every single one of the 25 companies sampled by Defendants' expert.  (Daines Decl. ¶ 31.)

Plaintiff can vote against the proposed incentive plan.  He can seek to persuade other shareholders to vote against the plan.  He can even sell his shares.  All of these actions are consistent with the public interest in allowing the efficient internal affairs of the corporation to maximize shareholder wealth.  But seeking to enjoin the vote altogether, in the hopes of obtaining disclosure of information that is incorrect, immaterial, or already disclosed, is definitely not in the public interest.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is DENIED.

DATED:     February 12, 2014

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE